ANNA KELLY v. JAMES KELLY and MICHAEL KELLY.

(GENERAL TERM, THIRD DEPARTMENT, MARCH, 1872.)

A devise and bequest of " all the real and personal estate of which I may die possessed, share and share alike," to the testator's children, two in number, with direction afterward that the executors lease the testator's house and lot (the property devised) and apply the rents to payment of debts and support of the children, and a subsequent clause expressing a wish that the property should remain unsold and without mortgage until the youngest child should be twenty-one.

*Held*, to carry a fee to the testator's children, liable to be defeated only by the death of both of the children during the testator's lifetime, subject, nevertheless, to a trust in the executors during their minority, notwithstanding the will also provided that in case of the death of either of the children, the whole estate should go to the survivor, and in case of the death of both, all the property, or what might be left, to sons of the testator's brother.

*Held*, further, one of the children having survived the testator, and died intestate, that the plaintiff, a daughter of the testator's deceased brother, and the testator's two nephews, sons of another deceased brother, took each of them, as heirs-at-law of the intestate, an equal third of the estate.

CASE agreed upon under section 372 of the Code.

The question presented is the construction of the will of James Kelly, deceased, who died on the 20th of December, 1852, leaving a last will and testament, which was admitted to probate on the 29th of December, 1852, by the surrogate of Albany county. The property devised consisted of a house and lot situated in the city of Albany. The first provision of the will is for the payment of his debts. The second is, " I give, devise and bequeath unto my beloved children, Mary Ann Kelly and James Kelly, all the real and personal estate of which I may died possessed, share and share alike."

The third directs the executors to rent his house and lot, and apply the rent to payment of debts and support of his children, and expresses his desire as to the education of his children. The fourth is, "in case of the death of either of my said children, I devise my whole estate to the survivor; and in case of the death of both, I devise all my property, or what may be left, to James and Michael Kelly, sons of my brother Bernard, of New York, or the whole to the survivor of them." The fifth appoints executors. The sixth expressed his desire that his property should not be mortgaged or sold until his youngest child attained the age of twenty-one years.

Both of the children died before they became twenty-one years of age, without issue, and without ever having been married; Mary Ann in 1854, and James in 1866. James Kelly and Michael Kelly claim the property under the fourth clause of the will. Ann Kelly, who is a daughter of a deceased brother of the testator, claims, that she is entitled to one-half of the property as one of the heirs-at-law of James Kelly, the younger, and that defendants are seized of the other half. The only question now before the court is, whether James and Michael Kelly are entitled to the property under the will, and, if not, what portion of the property the plaintiff and the defendants are each entitled to.

*John W. McNamara*, for the plaintiff.

*Philip Malone*, for the defendants.

Present—MILLER, P. J., POTTER and BALCOM, JJ.

By the Court—MILLER, P. J. The second clause of the will of the testator, beyond any question, if considered by itself, devises an estate in fee to Mary Ann Kelly and James Kelly, the children of the testator. Under the Revised Statutes no words of inheritance are required, and the devise passed all the testator's real and personal estate. (1 R. S., 748, § 1.) There is nothing, I think, in the subsequent provisions of the will inconsistent with this construction of the second clause.

I think that the third clause was intended to provide for the payment of debts and the support of the infant children and devisees during their minority, without a sale or mortgage of the real estate; and this is made more manifest by the provision of the sixth clause against a sale or mortgage until the youngest of the children should "attain the age of twenty-one years." The sixth and last clause shows, I think, the intention of the testator to devise the entire premises, in fee, to his children. He expresses a desire that the property shall not be sold or mortgaged until the youngest child is of age, without restricting a sale or mortgage positively and affirmatively, having in view, no doubt, that as the fee was devised, a sale or mortgage might be made on the application of the infants. This was unnecessary if there was only a limited estate devised, and does not, in my opinion, tend to show, as is claimed, that the property was to be kept until the children arrived at the age of twenty-one years, for the benefit of others in case of their death before that period, but directly to the contrary.

The fourth clause in the will, upon which the defendants rely, cannot, I think, be construed, alone or in connection with other parts of it, as merely giving a life estate to the children, and was intended to provide for the contingency of the death of the children before the decease of the testator. Had the testator intended to give the children only a life estate, he, no doubt, would have employed entirely different phraseology. The devise would have expressed that it was "for and during the natural life or lives," or to that effect, and provided for the fee "after" or "upon the death." Nor would he have provided, if he intended a life estate, that upon the death of one of them the survivor should take the "whole estate," instead of a life estate, thus changing the entire character of the estate in case either of them died and one survived the other. The clause in question must be interpreted, rationally; and looking at it in this point of view, it is plain that the testator merely intended to provide for the contingency of his children's death before his own, and it must be

read as if the words "before my decease" were inserted in the fourth clause after the word "children," and after the word "both." He would thus devise the property, in fee, to the children, unless they died before him; and in that case, to his nephews named in the will.

Any other construction would be contrary to the natural instincts of a father, and do violence to the plain import of the will. There is no reason for supposing that a parent would give to his minor children a less estate, and to his nephews the greater estate, and the testator was merely guarding against events which might occur prior to his decease and not after his death.

If the fourth clause can be construed, as intended, to take effect after the death of the testator, then as Mary Ann Kelly died before her brother James Kelly, the latter, as survivor, would be seized of an estate in fee; and upon his decease the estate descended to his heirs-at-law, who are parties to this controversy. Either view of the subject leads to the same result.

I am inclined to think that the parties take *per capita* and not *per stirpes.* By section 10, sub. 3, R. S., 752, when the brothers and sisters are dead, then the estate goes to the descendants. By section 7, sub. 3, R. S., 752, if there are collateral relations, "all of equal degree of consanguinity to the intestate, the inheritance shall descend to them in equal parts, however remote from the intestate the common degree of consanguinity may be." As in this case the surviving relations were all cousins, they were entitled to equal parts of what descended to them respectively. This construction of the statutes is supported by authority. (*Pond* v. *Bergh,* 10 Paige Ch., 140, 148; *Hyatt* v. *Pugsley,* 23 Barb., 301.)

A decree must be entered that Ann Kelly is entitled to and seized of an estate, in fee, of one-third of the real estate, and James Kelly and Michael Kelly each to one-third thereof.

The costs of the action should be paid out of the estate, each one of the parties paying a proportionate share thereof.

POTTER, J.   There is no ambiguity about the second clause of the testator's will.   It is a plain devise of a fee to his two children, Mary Ann and James, of his whole estate.

The third clause of the will creates a power, in trust, in his exectors to rent his real estate; and this, taken in connection with the sixth clause, continues this power until the youngest, or the survivor of them, shall arrive at the age of twenty-one.

Although the second clause devises a fee to each of these children, it is necessary to read it in connection with the fourth clause, which creates a contingent limitation over to the survivor in case of the death of one of them.

All this is very clear.   At this point the necessity of construction commences, and here several inquiries begin.   It is manifest that the testator meant "*by the death of either of my said children*" something more than is expressed in words; something has been omitted, and something of necessity must be supplied by interpretation.   Wills are to be interpreted, not only according to the intent of the testator, but that intent must be determined by reason.   It is well established that words in a will will be supplied, in order to effectuate the intention, as collected from the context, and this may be done by the court in order to give the will effect.   (*Covenhoven* v. *Shuler*, 2 Paige, 123.)   Now, it is neither sensible or natural that this will should be construed according to its strict letter, to wit, " in the case of the death of either of my said children, I devise my whole estate to the *survivor*."   It must be asked—death, when ?

To show the absurdity of following the letter strictly, suppose the daughter, Mary Ann, had died leaving children.   Did the testator intend by this language that at her death her *issue* should be disinherited and the estate go to James? Such is the *letter*, and so *vice versa*.   And did the testator further intend, that in case both of his children should die, and both leaving issue, their issue should be disinherited and the estate then go to more distant relations ?   Such is the strict letter.   When *both die*, the estate, by the *letter*, goes to others than the descendants of his children.

Kelly *v.* Kelly.

We must then seek for some more natural and reasonable construction of this will than to hold that the testator intended that his own descendants and blood should be cut off. We must presume the testator was possessed of the ordinary natural affection. We must presume that he was possessed of sufficient intelligence to have known of that law of nature that his children would die. We may further presume that when the testator used these words he had in view either some period of time at which they should die, which he *omitted* to express, or to some condition of the devise, such as dying without issue, or as dying before his own decease. To ascertain this *intent*, and to supply this *omission*, is the duty of the court.

The difficulty in all such cases arises from the testator having applied the term expressing this contingency, viz., the *death* of one of the children,—an event, of all others, the most certain and inevitable, but the period of its happening, a period the most uncertain by any human calculation.

To satisfy this term, then, it is necessary to connect this *death* with some circumstance in association with which it is contingent. Such circumstance is naturally the time of its happening; and such *time*, where the bequest is immediate, as it is in the case before us, is necessarily the *death* of the *testator*, there being no other *period* to which, by proper legal construction, the word death can refer. (1 Jarm. on Wills, 468.)

If we are right in this legal view, then it strengthens the position that the estate devised in the second clause of the will created a fee in the two children of the testator, Mary Ann and James. The case of *Hinkley* v. *Simmons* (4 Vez., 161) was exactly, in its terms in that respect, like the will before us. It was as follows: " I do give and bequeath unto my sister, Mary Hinkley, all my fortune and everything I have a power to leave; and in case of her *death*, I do then give and bequeath all I have to my mother, Mary Hinkley." Mary, the sister, married Simmons and died, leaving her mother surviving. The mother then dying, her heirs claimed

that the estate devised to the sister was a life estate, and at her death came to the mother. The bequest to Mary, the sister, was held to be an absolute estate, and it was held that the words, "*in case of her death*" imported a *contingency* and not a *limitation*.

To the same effect is the will in the case of *Lowfield* v. *Stoneham* (2 Strange, 1261); and the same adjudication in *Cambridge* v. *Rous* (8 Vez., 12.)

It would then seem that the testator having died, leaving his two children him surviving, and they taking an absolute fee by an immediate possession of the estate, subject to a power in trust only in the executors to lease it; and James, the testator's son, having survived his sister, Mary Ann, took the whole estate, both by limitation over in the will and by inheritance, as the only heir-at-law of Mary Ann.

In this view, the estate of James Kelly the son being an absolute estate in him, James and Michael Kelly, sons of Bernard, take nothing under the will.

At the time of the death of James Kelly, the son of the testator, Bernard and Thomas Kelly, the brothers of the testator, were dead; Bernard leaving him surviving his two sons, James and Michael, the defendants, and Thomas leaving him surviving only Ann Kelly, the plaintiff, and these are the only heirs-at-law and next of kin of James, son of the testator, and all of equal degree of consanguinity to the intestate, and are each entitled to inherit an equal portion of the estate. (1 Rev. Stat., 752; 23 Barb., 148; *Pond* v. *Bergh*, 10 Paige, 142, 149.)

I think the order should be that the plaintiff and defendants inherit the estate in equal degree, one-third to each.

BALCOM, J. MILLER, P. J., and POTTER, J., having written opinions in this case, I shall do little else than to state my conclusions: 1. By the second clause in the will of James Kelly, he gave and devised all the real and personal estate of which he should die possessed unto his children, Mary Ann Kelly and James Kelly, share and share alike.

2. By the fourth clause in such will, as that clause should be interpreted, in case either of the children of the testator should die without issue before his own death, the surviving child would take the whole estate of the testator; and in case of the death of both of such children without issue before the death of the testator, then the whole of his estate was to go to his two nephews, James and Michael Kelly. 3. Both of the children of the testator survived him and took an estate, in fee, in the real property left by him, and shared alike therein. 4. The testator died on the 20th day of December, 1852. His daughter, Mary Ann Kelly, died before she became twenty-one years of age, without issue, about the 1st day of January, 1854; and his son, James Kelly, died before he became twenty-one years of age, and without issue, about the 6th day of December, 1866, and neither the daughter nor the son of the testator alienated the property the testator left them, or left a will. 5. The only heirs the son James Kelly left surviving him were the defendants, James Kelly and Michael Kelly, sons of a deceased brother of the testator, and the plaintiff, Ann Kelly, a daughter of another deceased brother of the testator. 6. The parties to this controversy being cousins of James Kelly, deceased, from whom they take title to the real estate in question, as his heirs-at-law, the question arises whether each one takes the one undivided third part of such real estate, or whether the plaintiff takes the one undivided half of such real estate, and the two defendants the other half thereof. 7. My conclusion is that the plaintiff is entitled to one undivided third part of the real estate in question, and that each of the defendants is entitled to one undivided third part of such real estate. (3 R. S., 5th ed., pp. 41 and 42, §§ 6 to 11; *Pond et al.* v. *Bergh et al.*, 10 Paige's Ch. Reps., 140.) 8. Judgment should be rendered in the action in conformity with these conclusions.

Ordered accordingly.